UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VERNON BOUDREAUX** | **CIVIL ACTION** |
| **versus** | **NO. 07-1041** |
| **BURL CAIN, WARDEN** | **SECTION: "F" (6)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE as untimely**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Vernon Boudreaux, is a state prisoner who was incarcerated at the Louisiana State Penitentiary in Angola, Louisiana when this petition was filed. Subsequently, he was transferred to the Louisiana State Police barracks in Zachary, Louisiana. Boudreaux was convicted of armed robbery, in violation of La. R.S. 14:64 on October 21, 1999.[2] Boudreaux was sentenced to thirty years without the benefit of probation, parole or suspension of sentence.[3] His conviction and sentence were affirmed by the Louisiana Court of Appeal, Fourth Circuit on December 20, 2000.[4] The Louisiana Supreme Court denied writs on January 4, 2002.[5]

On or about October 15, 2002, petitioner filed an application for post-conviction relief with the state district court.[6] When no ruling was forthcoming, petitioner subsequently filed a writ of mandamus with the Louisiana Court of Appeal, Fourth Circuit on or about May 20, 2004. The Fourth Circuit denied the petitioner's post-conviction relief application on June 30, 2004.[7] An

---

[2] See Jury Verdict Form in Orleans Parish Criminal District Court Case # 407-886, Sect. A, State Rec. Vol. 1of 3; See also docket entry dated 10/21/99 in same volume.

[3] See Minute Entry and Docket Entry, State Rec. Vol. 1 of 3; Transcript of Sentencing and Motion for New Trial, dated 11/15/99, State Rec. Vol. 2 of 3.

[4] *State v. Boudreaux*, 777 So.2d 596 (No. 2000-KA-0073) (La. Ct. App. 4th Cir., 12/20/2000). A copy of the appeal denial can be located in State Rec. Vol. 2 of 3.

[5] *State ex rel. Boudreaux v. State*, 805 So.2d 1183 (Jan. 4, 2002). A copy of this decision can be located in State Rec. Vol. 1 or 3 of 3.

[6] A pleading entitled, "Memorandum Of Law in Support of Post-Conviction Relief" can be found in State Rec. 3 of 3 and is signed and dated October 15, 2002. It appears to have been attached to the subsequently filed Writ of Mandamus filed with the Louisiana Court of Appeal, Fourth Circuit.

[7] *See* State Rec. Vol. 3 of 3 for a copy of this writ and the denial of same, Writ No. 2004-K-0881.

untimely writ application to the Louisiana Supreme Court was signed and dated on November 29, 2004 by petitioner and said writ was denied on November 28, 2005.[8]

On or about February 8, 2006, petitioner's federal writ of habeas corpus was received by this court. On February 9, 2006, the petition was found to be deficient and a request for petitioner to either submit the $5.00 filing fee or to make a request for pauper status if he could not afford the fee, was sent to petitioner. A form for applying for pauper status was enclosed with the letter (IFP form). No pauper request or fee was forthcoming from Boudreaux. On or about March 22, 2006, Boudreaux mailed a letter to the court notifying the court of a change of address from the Louisiana State Penitentiary to Dixon Correctional Institute. On May 1, 2006, the *pro se* unit of this court sent a second deficiency letter to Boudreaux, this time mailed to him at the Dixon Correctional Institute, requesting that he either pay his $5.00 filing fee or submit the enclosed IFP form requesting pauper status.[9] Once again, no response or correction of the deficiency was made by Boudreaux. Finally, on or about February 2, 2007, petitioner signed and apparently tendered to his custodian for filing an IFP form requesting pauper status from this court.[10] The application to proceed *in forma pauperis* was received and denied by the court on February 26th, 2007, as petitioner had sufficient funds with which to pay the $5.00 fee. About a year and a half later, petitioner paid the $5.00 fee and his federal habeas application was filed into the record on August

---

[8] *State ex rel. Boudreaux v. State*, 916 So.2d 136 (La. 11/28/05)( No. 2004-KH-3118). A copy of the denial can be found in State Rec. Vol. 3 of 3.

[9] A copy of the deficiency letters are attached to this Report and Recommendation.

[10] See Fed. Rec. Doc. 1.

20, 2008.[11] Boudreaux's habeas petition raises four claims for relief. The state contends, however, that petitioner's federal application is untimely filed in this court and should therefore not be address on the merits.[12] For the reasons explained below, the court finds petitioner's habeas application is time-barred from federal review.[13]

**Analysis: Timeliness**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[14]

As earlier noted, petitioner's conviction and sentence were affirmed by the Louisiana Court of Appeal, Fourth Circuit, on December 20, 2000. He then had thirty days, or until January 19, 2001, under state law, to seek review with the Louisiana Supreme Court.[15] It does not appear that

---

[11] See Fed. Rec. Doc. 5, filing date of 08/20/08.

[12] Fed. Rec. Doc. 12.

[13] The bases found by the court for dismissing petitioner's application as untimely differ from the analysis offered by the State in its response.

[14] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

[15] **Louisiana Supreme Court Rule X, Section 5 provides, in pertinent part:
Writ Applications; Time for Filing.**
(a) An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs (but not when the court has merely granted an application for purposes of further consideration), or after a denial of an application, **shall be made within thirty days** of the mailing of the notice of the original judgment of the court of appeal; however, if a timely application for rehearing has been

petitioner timely sought review as the ruling of the Fourth Circuit bears the following notation: "rehearing not applied for" and "writs not applied for".[16] Petitioner belatedly sought review from the Louisiana Supreme Court by filing a "writ of certiorari or review" outside of the time frame set forth in state law.[17] Petitioner's request for review was not adequately dated when signed by petitioner although the date of "May __, 2001" is listed above his name and the envelope containing said request was metered on June 4, 2001. The writ was stamped "filed" with that court on June 26, 2001.[18] Even considering that petitioner's application was mailed sometime in May of 2001, it was already more than 3 months late.

        The late filing of a request for the Louisiana Supreme Court to conduct direct appeal review has been considered in the case of *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008). In that case, Butler filed an untimely writ application seeking review of his direct appeal to the Louisiana Supreme Court. On federal habeas review, he argued that his direct appeal was pending throughout the entire appellate review process, including the time that the untimely writ application was pending before the Louisiana Supreme Court. He based his assertion upon the Louisiana Supreme Court's one word order that the application was "denied" and argued that the highest state court had exercised its discretion to consider his untimely filing. He also alternatively argued that he was

---

    filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing. **No extension of time therefor will be granted (emphasis added).**

[16]See State Rec. Vol. 2 of 3.

[17]See State Rec. Vol. 3 of 3.

[18]See State Court Rec. Vol. 1 of 3 for a copy of a letter from the Louisiana Supreme Court confirming the meter and file date.

entitled to tolling for the time the untimely application was pending before the Louisiana Supreme Court.

The U.S. Fifth Circuit rejected both arguments in *Butler*.[19] First, the court found that the Louisiana Supreme Court had not excused the untimely filing when it issued its one word, i.e., "denied", order. "Most persuasive to us, the Louisiana Supreme Court would have violated its own rule if it had considered Butler's petition on the merits. A Louisiana Supreme Court rule requires that an 'application seeking to review a judgment of the court of appeals,' must be filed within thirty days; it specifies that '(n)o extension of time therefor will be granted.' La. Sup. Ct. R. X, §5(a)." *Id.* at 319. The court thus concluded that the Louisiana Supreme Court must have found Butler's application for further review of his conviction to be untimely and thus ran the one year limitation period from the thirty days after the direct appeal had been reviewed at the intermediate court level, when the state conviction was thus final.[20]

With regard to the tolling issue, the court found that because Butler's untimely writ application was part of the direct appeal process, albeit an untimely part of the process, the untimely writ which was pending before the Louisiana Supreme Court did not toll the limitations period as a state post-conviction pleading might pursuant to 28 U.S.C. 2244(d)(2). The tolling provision of Section 2244(d)(2) would normally exclude from the limitations period any time that a *state habeas proceeding* which was "properly filed" was "pending". The *Butler* court found Section 2244(d)(2)

---

[19]The first argument was rejected on the merits; the second was considered inapplicable and thus rejected.

[20]The *Butler* court further emphasized that the evaluation of when a conviction is final for federal habeas purposes is based on *federal* law rather than state law. See *Butler* at 318 n. 1.

tolling was inapplicable to the untimely writ application filed with the Louisiana Supreme Court as Butler was not seeking post-conviction relief but rather was seeking review of his *direct appeal*. *Id.* at 320.

Based upon the rationale of *Butler*, therefore, Boudreaux's state conviction became final thirty days after the December 20, 2000 decision of the Louisiana Court of Appeal, Fourth Circuit, reviewing Boudreaux's direct appeal, or on January 19, 2001.[21] Boudreaux gets no credit ("tolling") for the time when the untimely writ was pending before the Louisiana Supreme Court. Thus, his one year federal limitations period would expire on January 19, 2002.

At this point, the court must pause to consider a letter found in Boudreaux's state court record. The record shows that on or about March 21, 2001, petitioner sent some sort of request for an extension of time to the Louisiana Supreme Court. The Central Staff of that court responded via letter to petitioner, telling him that the court had received his "motion" and that he would be given an extension of 60 days. The letter, however, does not reference a particular motion, writ application or even a case number and a copy of the March 21, 2001 letter from petitioner containing said extension request is not contained in the state court record.[22] The extension request likely was

---

[21]If the appeal process stops prior to reaching the Louisiana Supreme Court, the conviction becomes final when the time to pursue the next step in direct review expires. *Butler* at 317, *citing Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); *see also McGee v. Cain*, 104 Fed.Appx. 989, 991 (5th Cir. 2004), *citing Roberts*, *id.*; *Armstrong v. Cain*, 2008 WL 3876408 *6 (the Fifth Circuit "has made clear that a late filed Louisiana Supreme Court writ application does not act to continue the direct appeal process and therefore does not bear on the finality of a conviction.")

[22]A staff member of the undersigned Magistrate Judge also contacted the Louisiana Supreme Court's Clerk of Court office to see if that court's file contained a copy of petitioner's extension request but no such documented was located.

made in reference to a motion to produce documents which was denied by the Louisiana Court of Appeal, Fourth Circuit on March 6, 2001 and which ruling was appealed (untimely) to the Louisiana Supreme Court on April 26, 2001 in writ no. 01-KH-1180.[23] It seems far less likely that the extension request is in reference to petitioner's request for certiorari review as the deadline for filing that pleading with the Louisiana Supreme Court had passed prior to the March 21, 2001 extension request being made and since Louisiana Supreme Court Rule X, Sect. 5, specifically **prohibits** the granting of an extension of time.[24] The court need not speculate, however. Regardless of which pleading was referenced in the petitioner's extension request, the U.S. Fifth Circuit has rigorously applied La. Supreme Court Rule X, Sec. 5 to applications for writs filed with the Louisiana Supreme Court and has determined, at least with regard to a post-conviction writ, that state law prohibits any extension of the deadline set forth in La. Sup. Ct. Rule X. Moreover, the Fifth Circuit has ruled that this prohibition controls *even when an extension letter has been given to a prisoner from the Central Staff*. See *Bowie v. Cain*, 33 Fed. Appx. 705, 2002 WL 432675 (5th Cir. 2002)(unpublished).[25] This court can discern no reason why an untimely application for a writ of certiorari would be treated differently than a post-conviction writ by the U.S. Fifth Circuit since La. Sup. Ct. Rule X, Sec. 5 applies to both types of writs. Moreover, the court notes that, upon receipt of petitioner's

---

[23] See the March 6, 2001 ruling by the Louisiana Court of Appeal, Fourth Circuit (writ no. 01-K-0158) and a copy of the Motion to Produce Documents filed as writ no. 01-KH-1180 in the Louisiana Supreme Court, in State Rec. Vol. 3 of 3.

[24] See footnote 15, herein.

[25] A copy of the *Bowie* decision was filed into the record via minute entry this date and will be provided to the parties. Although *Bowie* is an unpublished decision and not precedential, the court finds the reasoning of *Bowie* to be persuasive.

application, the petition was marked as untimely ("unt. KO") and was re-captioned so as to not be treated as part of the direct appeal process.[26] The court thus finds that, pursuant to § 2244(d)(1)(A), Boudreaux's conviction became "final" on January 19, 2001, when his period expired for seeking review of the Fourth Circuit's decision on direct appeal from the Louisiana Supreme Court. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Accordingly, petitioner's one-year period for seeking federal *habeas corpus* relief commenced on that date, and expired one year later, on January 19, 2002, unless that deadline was extended through tolling.

The Court considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). The first properly filed post-conviction application filed by Boudreaux would be the application filed on or about October 15, 2002. By the time of this filing, however, the one year federal limitations period had already expired (on January 19, 2002), with the result that the instant petition is time-barred from federal review.

**Alternative Grounds for Time-bar Dismissal**

Although it is clear that Boudreaux's federal habeas is time-barred, the court notes additional grounds exist to find that the application should be time-barred. Even if the court were to consider the May, 2001 writ application filed with the Louisiana Supreme Court as timely filed, petitioner would still be untimely before this court.

---

[26]The cover page of petitioner's writ to the Louisiana Supreme Court was altered after filing for the caption to read: "*State of Louisiana ex rel. Vernon Boudreaux v. State.*"

Pursuant to 28 U.S.C. § 2244(d)(1)(A), when a habeas petitioner has pursued relief on direct appeal through the state's highest court, a conviction that has become final pursuant to La.C.Cr.P. art. 922 is considered final for purposes of 28 U.S.C. § 2254 when the time expires for a defendant to seek certiorari at the United States Supreme Court, i.e., ninety days after the decision of the Louisiana Supreme Court on direct appeal is final. *Butler*, 533 F.3d at 317, *citing Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003); *Johnson v. Cain*, 2000 WL 14688, *1 (E.D.La. 2000), *citing Ott v. Johnson*, 192 F.3d 510, 511 (5th Cir. 1999)*; see also* U.S. Sup. Ct. R. 13(1). If the court assumes, *arguendo*, that petitioner's direct appeal did not conclude until the January 4, 2002 denial by the Louisiana Supreme Court, he would then have had ninety days to seek review of this decision from the U.S. Supreme Court, or until April 4, 2002.[27] A lapse of **192** days occurred between April 4, 2002 and petitioner's state post-conviction filing on October 15, 2002. The post-conviction application was then pending until the Louisiana Fourth Circuit denied relief on June 30, 2004. At this point, Boudreaux had until July 30, 2004, or thirty days, to file for review with the Louisiana Supreme Court. See La. Sup. Ct. Rule X, §5(a). Instead, he again filed an untimely writ application with that court on November 29, 2004. Thus, as of July 30, 2004, petitioner's state post-conviction application ceased to be "properly filed" and could no longer toll the limitations period pursuant to 28 U.S.C. 2244(d)(2). *Williams v. Cain*, 217 F.3d 303, 311 (5th Cir. 2000). The limitations period therefore continued to run from July 30, 2004 until Boudreaux submitted his federal habeas application on or about February 8, 2006, an additional **557** days later. Adding the **557** days to the **192** days which lapsed between the state direct appeal process and state post-conviction process, a

---

[27]Boudreaux did not seek U.S. Supreme Court review.

total of **749** days passed, 384 days more than the one year federal limitations period allowed. Thus a second ground exists to justify time-barring Boudreaux's federal habeas petition.

Moreover, a third yet more uncertain ground for finding Boudreaux's petition time-barred exists. The record shows that, on or about February 8, 2006, Boudreaux submitted a petition to this court but did not submit the required pauper application or the $5.00 filing fee. He failed to correct this deficiency for more than a year, ignoring two written requests from this court for correction of the filing deficiency. The question thus becomes should this additional one year period of time, after submission of the deficient application, be counted against petitioner or did the statute of limitations stop running against him with the tendering of his (deficient) federal application to his prison custodian for filing? In other words, the court must determine when the federal habeas petition was "filed" for purposes of determining when the federal limitations period stopped running against petitioner.

In *Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000), the U.S. Supreme Court was presented with the question of whether an application for state post-conviction relief was "properly filed". Although the instant case deals with the proper filing of a federal rather than a state petition, the language of *Artuz* is instructive:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. See, *e.g., United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916)("A paper is filed when it is delivered to the proper official and by him received and filed"); Black's Law Dictionary 642 (7th ed.1999) (defining "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record"). And an application is " *properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the

time limits upon its delivery (footnote omitted), the court and office in which it must be lodged, and the requisite filing fee. See, *e.g., Habteselassie v. Novak*, 209 F.3d 1208, 1210-1211 (C.A.10 2000);199 F.3d, at 121 (case below); *Villegas v. Johnson*, 184 F.3d 467, 469-470 (C.A.5 1999);*Lovasz v. Vaughn,*134 F.3d 146, 148 (C.A.3 1998).

When filing his federal habeas application, Boudreaux had to be in compliance with the Rules Governing Section 2254 Cases. Included in these rules is Rule 3, as follows:

**Filing the Petition; Inmate Filing**

**(a) Where to File; Copies; Filing Fee.** An original and two copies of the petition must be filed with the clerk and must be accompanied by:

(1) the applicable filing fee, or

(2) a motion for leave to proceed in forma pauperis, the affidavit required by 28 U.S. C. §1915, and a certificate from the warden or other appropriate officer of the place of confinement showing the amount of money or securities that the petitioner has in any account in the institution.[28]

Boudreaux's federal habeas was not in compliance with Rule 3 at the time it was submitted to the court on February 8, 2006 because Boudreaux did not tender a filing fee nor did he file an application for *in forma pauperis* status. If *Artuz* is equally applicable to determine when a federal application is properly filed, Boudreaux's federal petition would have been deficient to stop the running of the limitations period until he had submitted either the IFP application or the filing fee. One court has found that where there is non-compliance with the rules for filing federal

---

[28]The 2004 Amendments to Rule 3(b) require the clerk to file rather than return a petition, even though it may otherwise fail to comply with the filing requirements. *See Advisory Committee Notes to 2004 Amendments.*

habeas cases, the act of submitting such pleadings does not constitute a "filing". See *Perkins v. Quarterman*, 2007 WL 465221 (N.D. Tex, Feb. 13, 2007)(Original submission date forfeited where petitioner failed to comply with Rule 2 requiring signature of petitioner or his authorized representative on petition).

The Fifth Circuit has not specifically addressed the issue of what is considered a "filing" of a federal habeas application for purposes of stopping the federal time limitations period. However, in *Spotville v. Cain*, 149 F.3d 374 (5th Cir. 1998), a habeas petitioner filed his federal habeas application along with an application to proceed *in forma pauperis* (IFP), prior to the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). The IFP was denied and the petitioner waited nearly a year and a half, and after the AEDPA had become effective, before he paid the requisite $5.00 filing fee. The district court denied the application as time-barred, finding that the one year limitations period set forth by the AEDPA applied as the petition was considered "filed" as of the date the fee was paid rather than the date the application was tendered for filing. The U.S. Fifth Circuit reversed, however, holding that a petition is deemed "filed", for purposes of determining the applicability of the AEDPA, when the petitioner "tendered the papers to the prison authorities for mailing to the district court, and not upon payment of a filing fee subsequently required after his IFP status was denied." At first glance then, *Spotville* appears to indicate that the date when a *pro se* litigant tendered a habeas application to his prison custodian is the date the application is considered "filed". However, *Spotville* is distinguishable on several grounds from the instant case. First, *Spotville* dealt with the date when a petition was deemed filed *relative to the applicability of the AEDPA* rather than for purposes of determining whether the federal limitations

period had expired, as in the instant case. Second, *Spotville* addressed the delay which occurred after IFP status had properly been applied for and denied rather than where no IFP status was applied for and/or where no filing fee was paid at all. The decision in *Spotville* clearly indicated that the habeas petitioner had tendered his habeas application to his prison custodian *in compliance with Rule 3*, *i.e.,* with payment of the filing fee or with a completed application for *in forma pauperis*, rather than as a deficient filing pursuant to Rule 3, as is the situation here. "Spotville, acting *pro se*, submitted a habeas corpus petition, his fifth, along with an application to proceed IFP, to the United States District Court for the Eastern District of Louisiana." *Id.* at 375. Moreover, the *Spotville* court emphasized that "[b]ecause we have recognized that a *pro se* litigant has initiated, or "filed," his petition properly *when he has completed everything within his control to deliver the actual petition to the court*, we should not create a separate and somewhat contrary rule in a case in which a *pro se* litigant's IFP status is denied subsequent to initiating the petition." *Id.* at 376 (emphasis added).

Based on the above, it is doubtful whether *Spotville* controls in determining the date of the federal habeas filing for Boudreaux, who tendered his application to his prison custodian sometime between January 12, 2006 (signature date) and February 8, 2006 (date petition was received in this court) and yet waited until February 2, 2007 before he tendered a completed IFP form to his prison custodian for mailing to this court. While the U.S. Fifth Circuit has not had an opportunity to address the exact issue present in the instant case, the Seventh and Third Circuits have had such an opportunity. In *Jones v. Bertrand*, 171 F.3d 499 (7th Cir. 1999), the court found that, for statute of limitations purposes, an inmate's petition for habeas relief need not be accompanied by the filing fee or IFP application in order for the petition to be timely, *so long as one*

*or the other is sent within a reasonable time after the petition and there is no evidence of bad faith on the petitioner's part (emphasis added).* Since the petitioner in Jones immediately submitted his IFP application and fee after receiving notification from the clerk to do so and there was no evidence of bad faith, the court found the application to be timely submitted. *Id.* at 503-4. A similar result occurred in the unpublished case of *Harris v. Vaughn*, 129 F. Appx. 684, 690 (3rd Cir. 2005) (holding that the date of filing for statute of limitations purposes is the date that the federal habeas petition is received by the court or by the appropriate prison official [if the mailbox rule applies], regardless of whether payment or an *in forma pauperis* application is attached, *as long as either follows within a reasonable time and there is no evidence of bad faith*. The court determined, however, that the seventeen months between the filing of the petition and the submission of the filing fee or IFP application was unreasonable and the petition was properly dismissed.)[29]

        In the case at bar, Boudreaux failed to correct the Rule 3 deficiency for more than a year, ignoring two written requests from this court for correction of the filing deficiency. When he finally did comply with Rule 3 and submitted an application for *in forma pauperis* in February of 2007, his pauper application was denied as he had a savings balance of more than $249.00 and a drawing balance of more than $22.00. His average monthly balance for the preceding 6 months was also certified by prison officials as having been $188.27.[30] However, he then waited almost another year and a half before he paid his $5.00 filing fee. Although the court hesitates to find bad faith on

---

[29]The *Harris* court noted that Rule 3(b) had been subsequently amended and questioned whether the result might be different in light of the 2004 amendments. *Id*. at 689 n. 11.

[30]See Rec. Doc. 1, Application to Proceed Without Prepayment of Fees and Affidavit.

petitioner's part for the delay in paying the filing fee due to the leniency granted in *Spotville,* the court does find that petitioner's one year delay in curing the Rule 3 deficiency is unreasonable. Therefore, the one year period of time when petitioner's deficient federal habeas was in limbo, waiting for petitioner's compliance with Rule 3, would count against petitioner's limitations period and petitioner's federal petition would, alternatively, be time-barred on this ground as a result.

Finally, the United States Fifth Circuit Court of Appeals has held that the AEDPA's statute of limitations can, *in rare and exceptional circumstances*, be equitably tolled. *See Felder v Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000); *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotes and citations omitted). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.2d 872, 875 (5th Cir. 2006). "'[E]quity is not intended for those who sleep on their rights.'" *Id.* (quoting *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999)). Petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002). Petitioner has not asserted any facts to justify equitable tolling of his limitations period in this case with regard to any of the grounds for dismissal noted above nor does a review of the record before this court provide evidence that equitable tolling is justified.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Vernon Boudreaux be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 30th day of October, 2009.

_[signature]_  
**LOUIS MOORE, JR.**  
**UNITED STATES MAGISTRATE JUDGE**